**VALU FAGASOAIA and MAINA ATAFUA, for themselves and on behalf of the FAGASOIA FAMILY of Nuʻuli, Plaintiffs**

**v.**

**TUITOGAMAATOE FANENE, SIUFAGA FANENE, TUMEMA KIM, DONG IK KIM, PUAO SIONE, TEVESI SIONE, and PUAILOA TAVETE, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 34-90

February 13, 1991

Before REES, Associate Justice, TAUANUʻU, Chief Associate Judge, MATAʻUTIA, Associate Judge.

Counsel: For Plaintiffs, Asaua Fuimaono
For Defendants, Charles V. Alaʻilima

On Motion for Reconsideration:

This motion was heard on December 14, 1990. The Court announced from the bench its intention to deny the motion, except that the record would be left open for counsel to submit additional evidence with respect to two issues.

To restate briefly our principal reason for denying the motion, defendants are spectacularly wrong about the meaning of a separation agreement. Such an agreement "separates" a particular structure from the land on which it is built or to be built, so that the structure will be the property of the person building it rather than the landowner; nothing

72

more. Neither the statute authorizing such agreements, A.S.C.A. § 37.1501 et seq., nor the language of the particular separation agreement at issue in the present case even remotely implies that a person who has obtained a separation agreement for one structure may thereafter build other structures on the land, much less, as defendants assert, that "when there is a separation agreement, permits for building of structures within the area encompassed by the agreement [are] signed by the building owner, not the [landowner.]" The agreement at issue here identifies its subject as "a certain dwelling house" and the "said dwelling house" and identifies defendant Fanene as "the Building Owner." It certainly did not give her a right to build a substantially new and far larger structure, to be used as a store and not a dwelling house, without permission of the matai of the family who owned the land. *See Roberts v. Sesepasara*, 7 A.S.R.2d 139 (1988).

It is immaterial that defendant Fanene apparently attached to the copy of the agreement she filed in the Registrar's Office a map showing an area of land somewhat larger than necessary to build the dwelling house, and large enough for the store and much (but not all) of the other improvements she eventually authorized. It is not signed by Fagasoaia and there is no evidence that Fagasoaia knew anything about it. Moreover, even his endorsement of the 'map would not have changed the separation agreement into a blanket authorization to defendant to build whatever structures she pleased within the area in question.

This is particularly true of structures that would dramatically change the character of the use of the communal land in question. Even if defendant Fanene had had not only a separation agreement but also a traditional assignment of the land (as defendant Puao appears to have had on the other side of the road), she would have needed the permission of the matai for new structures and particularly for such a major change in the character of the property. A family member's right to live on family land does not include a right to build supermarkets, warehouses, and parking lots on it and rent these out to strangers. *Cf. Roberts, supra*, 7 A.S.R.2d at 142. In any event, the evidence in the present case is not to the effect that Fanene had a traditional assignment of the land; it is far more consistent with an assignment to her uncle, plaintiff Valu, whose permission she sought to build her house. It is ironic that she now uses the separation agreement as evidence of her right to dispossess Valu when the surrounding circumstances strongly suggest the matai may have signed precisely in deference to Valu's long possession of this area.

Finally, we did not and do not find that Fagasoaia signed the

agreement at all. Plaintiffs presented evidence tending to show that the signature on the document was not that of Fagasoaia. Plaintiffs also argued that defendant Fanene, who was then working in the Registrar's office, may have forged the signature. This is a most serious charge, and we see no reason to reach such a question when it would not affect our holding. If a separation agreement really meant what defendants say it means, however, it would become necessary to decide whether Fagasoaia really signed this one.

We left the record open for defendant Kim to present evidence of his expenditures on a warehouse across the road from the store. We are satisfied that he spent the $68,390.63 shown by his exhibits.

Defendant Kim also presented other voluminous post-trial exhibits (which, unlike the warehouse receipts, we did not request and did not expect) having to do with expenditures on things other than the warehouse. For a variety of reasons, we see no reason to change our judgment on account of these exhibits. For one thing, the family is entitled to the benefits of Kim's 1986 stipulation with defendant Fanene about his expenditures on the Valu/Fanene side of the road. For another, although we gave the family a credit for the year's free rent Kim has already had on the warehouse, we gave no such credit for the five years he has been using family property on the other side of the road. The amount of such a credit would more than offset any previously unreported expenditures Kim may have made.

Many of the expenditures put at issue after trial, moreover, were for a parking lot that was vigorously resisted by plaintiff Valu who preferred the coconut trees that were there before. Others are for hurricane damage for which it is virtually inconceivable that Kim has not been otherwise compensated and for which the family would have been compensated had its ownership of the buildings in question been recognized. It also appears that defendant Kim has inadvertently submitted some receipts which had to do not with the store, the warehouse, or the parking lot but with some of his other enterprises.

Finally, defendants submit that our estimate of $1500 as monthly rental for the warehouse is too high. Our estimate, however, was well within the range suggested by the post-trial exhibits submitted by defendants. As we understand the evidence presented at trial about the size of the warehouse, $1500 amounts to about 50 cents per square foot. Plaintiff has now submitted evidence of warehouse space renting for various amounts between 25 and 75 cents per square foot. (The 25-cent

74

warehouse actually rents for 50 cents per square foot of ground space, but has been divided into two stories. It is only six feet higher than the warehouse in the present case, and we cannot see that the division into two stories increases the amount of storage space.) The $1500 per month warehouse rental seems quite fair, at least as an interim figure pending negotiations between defendant Kim and the new Fagasoaia.

Our judgment is amended to omit the requirement that defendant Kim pay $1800 per month into the registry of the Court to be held for the benefit of the family. Instead, this monthly amount will continue to offset the as yet uncompensated portion of the $68,390.63 that Kim spent on the warehouse. (As of February 1, 1991, this uncompensated amount is $45,530.63.)

In all other respects the motion is denied.

It is so ordered.